UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILLIAM E. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>OHIO DEPT. OF CORRECTION MENTAL HEALTH CONTRACTOR, et al.,<br><br>Defendants. | ) | CASE NO. 1:08 CV 39<br><br>JUDGE DAN AARON POLSTER<br><br>MEMORANDUM OF OPINION AND ORDER |

On January 7, 2008, pro se plaintiff William E. Smith filed the above-captioned action under 42 U.S.C. § 1983 against the "Ohio Department of Correction Mental Health Contractor," "x-100 unknown officers/agents," Ohio Department of Rehabilitation and Correction ("ODRC") "Mental Health Director Jane/John Doe," Psychiatrist Dr. Sanelli, "unconstitutional Rules, Regulations, Statutes," and Americans With Disabilities ("ADA") Coordinator Mrs. Howe. (Compl. at 1.) In the complaint, plaintiff alleges that the defendants are deliberately indifferent to his serious medical needs. He seeks injunctive relief.

## Background

Mr. Smith states that he suffers from post traumatic stress disorder as a result of an incident that took place in Florida on March 23, 1993. On the day in question, Mr. Smith was working as a bartender in Bunny's Lounge when three gunmen entered the establishment with the

intent to rob and murder its occupants. While two of the suspects went behind the bar to confiscate the contents of the cash drawer, the third suspect began to line up the patrons and employees, including Mr. Smith, and shoot them in the head. Mr. Smith managed to overpower this assailant, wrestle away his gun, and shoot him in the chest. The injured gunman attempted to flee the scene but collapsed and died just outside of the building. The remaining two suspects fled the building before police arrived. They were never identified. Mr. Smith continued to experience a number of problems following the incident. He was subsequently diagnosed with post traumatic stress disorder.

At the time of the incident, Mr. Smith was awaiting sentencing for a felonious assault conviction in Richland County, Ohio. He returned to Ohio shortly after the incident occurred and was sentenced on April 7, 1993 to five to fifteen years incarceration. Mr. Smith was granted shock probation in 1994 but was arrested for violation of the terms of that release and again was incarcerated. He was released on parole for a second time after spending approximately thirteen years in prison. He apparently returned to Florida, where he was arrested in June 2006 and charged with felony battery. He was sentenced to nine months incarceration, and credited with 222 days of jail time. He was returned to Ohio in March 2007 to serve the remainder of his 1993 sentence.

Mr. Smith is currently incarcerated in the Richland Correctional Institution ("RiCI") serving the remainder of his 1993 sentence. He claims that despite his diagnosis, he is continually subjected to "normal ODRC policies." (Compl. at 6.) He characterizes RiCI as an "open bay (warehouse style)" institution which houses "young gangsta rap thugs" similar to the individuals who were responsible for the 1993 robbery in Florida. (Compl. at 6.) He feels that the design of the institution leaves him no avenue of retreat if he is cornered. He contends that he "cannot be expected to function as a normal person under these conditions." (Compl. at 8.) Although he does not want to be housed in the segregation unit, which he characterizes as punishing him for having

a disability, he objects to placement and classification in the general prison population. He claims he requested placement in the prison's residential treatment unit, and was told there was no space available. (Compl. at 8.) He indicates he does not take medication because he cannot tolerate being around crowds of people or standing in lines to obtain his medication. He further indicates he does not wish to "be sedated in a boilerplate atmosphere." (Compl. at 13.) He states that he would like to return to his medications "in his endeavor to some day overcome his impairment; [however,] this will not occur in his current setting and neither will his rehabilitation so he can function as a normal person." (Compl. at 7.)

In addition to the general lay out of the facility, Mr. Smith objects to the prison's policy of mandating GED class enrollment for all inmates who lack a high school diploma. He complains that "young street culture thugs" comprise most of the student body. (Compl. at 8.) He contends that attending group classes with these individuals increases his anxiety. Mr. Smith also voices his general objection to the mandatory GED attendance policy. He claims he earned his GED while serving in the army in 1979, but admits that the records cannot be verified due to their age. Mr. Smith further alleges that he "does not follow the fictitious traditional teachings of neo-secular theo [sic], ie Darwin's theory, Ohio History, Christopher Columbus, etc... ." (Compl. at 7.) He sought intervention from his psychiatrist and the ADA Coordinator but did not receive the relief he requested. He contends that the mental health professionals charged with his care will not enforce their recommendations when they are rejected by other prison officials.

On December 19, 2007, Mr. Smith was transferred from the relative comfort of his "secured setting" and moved to a school unit of the prison. (Compl. at 9.) He contends that this would have required him to live with the "street culture thugs" from his GED classes which would have aggravated his condition. He complained to various officials and was moved back to his former housing unit on the orders of the shift captain. He received a memorandum the following day, December 20, 2007, from the ADA Coordinator, informing him that he would be able to stay

in his original unit, however, he still would be required to attend GED classes. He claims that his incarceration "has become more punitive than rehabilitative and unusual under the 8th [amendment] to the United States Constitution." (Compl. at 12.) Mr. Smith asserts that the defendants are deliberately indifferent to his serious psychological needs.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons set forth below, Mr. Smith's claims against the two ODRC officials are dismissed.

Although Mr. Smith lists the ODRC Mental Health Contractor and the ODRC Mental Health Director as defendants in the case caption, he does not include any allegations against them in his complaint. It appears that these individuals were included in this action simply because they supervise the mental health programs in all of the Ohio prisons. A supervisor may not be held liable under 42 U.S.C. § 1983 for the acts of his or her employees. Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999). Rather, the supervisors must have actively engaged in unconstitutional behavior. Id. Liability must lie therefore upon more than a mere right to control employees and cannot rely on simple negligence. Id. There is no indication in the complaint that either the ODRC Mental Health Contracttor or the ODRC Mental Health Director participated in

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

any manner in the conduct described in the complaint.

The only other identifiable defendants in the complaint are RiCI Psychiatrist Dr. Sanelli and ADA Contractor Mrs. Howe. Mr. Smith asserts that they were deliberately indifferent to his serious psychological needs in violation of the Eighth Amendment. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state a claim for cruel and unusual punishment prohibited by the Eighth Amendment, a plaintiff must establish two elements. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Mr. Smith has not set forth facts to meet either the objective or subjective elements of this cause of action. The deprivations he describes, being housed in an "open bay" institution and being required to attend GED classes, are not on their face the types of conditions which deprive an inmate of a minimal element of civilized human existence. Mr. Smith bases his cause of action on his claim that the general design of the institution and his required school attendance increase his anxiety levels because they place him in contact with other younger inmates. There is nothing in the complaint to indicate that he has been threatened in any way by one of these inmates or that his condition has been worsened by the actions of the defendants. The fact that Mr. Smith's incarceration does not create the ideal environment for his rehabilitation does not equate to a violation of the Eighth Amendment.

Moreover, to support an Eighth Amendment claim, Mr. Smith must also demonstrate that the ADA Coordinator and the RiCI Psychiatrist acted with deliberate indifference to his serious medical needs. Farmer v. Brennan, 511 U.S. 825, 835 (1994). An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. Id. at 837. Mere negligence will not suffice. Id. at 835-36. There is no suggestion in the complaint that either of these individuals committed acts which placed the plaintiff in substantial risk of serious harm, or that they did so with the requisite subjective mental state to support a violation of the Eighth Amendment.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

*/s/Dan Aaron Polster 3/25/08*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.